BOUTALL, Judge.
This appeal involves the fault of an agent causing its principal to lose part of an advance deposit of brokerage fees made in expectation of obtaining a loan commitment. From an adverse judgment in favor of James Warren Negrotto, third-party defendant Pringle-Associated Mortgage Corporation has taken this appeal.
The original suit and subsequent, numerous, third-party actions arise from a series of negotiations involving Negrotto and two third-party defendants that acted as broker in attempting to secure financing for the construction of a motel on Negrotto’s beachfront property. Pringle-Associated Mortgage Corporation and Lar, Inc. entered into several written agreements with Neg-rotto culminating in the agreement of October 18, 1967, as amended by agreement on October 31, 1967, to secure the necessary loan commitment for a fee of ten percent of the total loan commitment, to be divided between co-brokers and investor as stated, payable when the loan was actually confirmed.
The testimony of both parties agree that there was to be established an escrow account in two banks (1% each) in the amount of 2% of the loan commitment for the investor.[1] The escrow agreement was to be effective for 30 days, unless a loan commitment was received. If no commitment was received, the 2% amount was to revert to the borrower, Negrotto. If the commitment was made, the sum was to go to the investor making the loan commitment.
At the time of the final agreement on October 31, James Warren Negrotto presented two cashier’s checks drawn on the Bank of Louisiana in New Orleans payable to the order of Lar, Inc. and Pringle-Associ-ated Mortgage Corp. in the sum of $11,000 each (each 1% of loan commitment). The checks were presented to a representative of Lar, Inc. and Lillian Rothstein, a representative of Pringle-Associated Mortgage Corporation (Pringle).
Subsequent to that date, Negrotto had payment on the checks stopped after he discovered that the purported investors were “fake”. Payment was successfully stopped on one of the $11,000.00 checks, but the other had been negotiated and paid. No valid loan commitment was ever made by the investor and Negrotto seeks recovery of the $11,000.00.
Appellant contends the trial court judgment to be erroneous in finding a duty owed by Pringle to establish the escrow account, finding the co-brokers to be liable in solido, and in dismissing the suit against Lar, Inc. while maintaining the suit against Pringle.
We do not agree that any issue of solida-ry liability is relevant to this appeal. We find no language in either the judgment or the Reasons for Judgment that indicates any finding of liability in solido between Pringle and Lar, Inc., nor any finding of joint liability of Pringle and Lar, Inc. for the $11,000.00.
*519 Instead, the trial judge found in his reasons for judgment that:
“The court feels that Pringle was the agent of Mr. Negrotto and the actions of Pringle’s employee, Mrs. Rothstein, in not assuring that these funds were deposited in an escrow account over which Pringle had control, results in the liability of Pringle to Mr. Negrotto.”
Thus, it is apparent that fault, or negligence, was the basis of liability found by the trial judge in the agent-principal relationship of Pringle and Negrotto.
The applicable Codal provisions are stated in articles 3018 and 3019 of the Louisiana Civil Code:
“Article 3018. Brokers are not responsible for the events which arise in the affairs in which they are employed; they are only, as other agents, answerable for fraud or faults.”
“Article 3019. Brokers, except in cases of fraud [on their part], are not answerable for the insolvency of those to whom they procure sales or loans, although they receive a reward for their agency and speak in favor of him who buys or borrows.”
The issue before us is whether Prin-gle, through its agent Lillian Rothstein, committed an act constituting fault which would create liability to Negrotto.
Both Rothstein and Negrotto attempted to verify the financial stability of the lender. The testimony became contradictory on the point of who caused Negrotto to hand over the checks. Negrotto testified that Pringle furnished Rothstein’s services to him to help and advise him in the transaction; that Rothstein told him that she was satisfied with the lender and to turn over the checks to Lar. Rothstein admitted she was there to advise and part of her job was to ascertain if the investor was valid, but she testified that she advised Negrotto against going ahead with the deal or turning over the checks.
The trial judge accepted the testimony of Negrotto on that point as to why he turned over the checks to Rothstein. As such, the trial judge made a credibility determination, and such a determination of credibility is entitled to great weight upon review. Canter v. Koehring Company, 283 So.2d 716 (La.S.Ct., 1973).
Rothstein was an attorney with considerable experience in financial investment matters and she admitted that she had doubts about the genuineness of the proposed lenders. Nevertheless, she endorsed the checks on behalf of Pringle without condition and turned the checks over to Lar’s agent. The checks were not endorsed for deposit, but instead endorsed in a manner to make them negotiable. She testified that in previous dealings with Lar this had been done without any subsequent trouble. This action effectively eliminated any control over the checks by Negrotto or Pringle. Based on a combination of these facts and the advice of Rothstein, Negrotto handed over the checks totalling $22,000.00, but the checks were not put into escrow by Lar. Instead, the checks were used for the benefit of Lar and the money was not refunded to Negrotto when it became known to all parties that there would be no loan commitment by the investors.
In short, Negrotto’s loss of the $11,000.00 was caused by his agent Pringle failing to insure that the interests of Negrotto were protected in dealing with an unknown investor. We agree that the liability of Prin-gle arises from such fault.
Accordingly, for the foregoing reason, the judgment appealed is affirmed.
AFFIRMED.

. The relevant parts of the October 18, 1967 agreement entitled “ESCROW AGREEMENT”:
“Borrower hereby retains the services of the Broker to obtain the commitment described in 2 above.
“The Borrower agrees to establish an Escrow Deposit in an amount equal to 1% of the gross amount of the loan described herein, said escrow to be established with Chase Manhattan Bank of New York, New York, hereinafter designated as the “Bank” on or before October 20, 1967. The Escrow is to be established for a period of 30 days and to provide for the following:
“The “Bank” is by this instrument instructed to release the full amount of the said Escrow Deposit to the Broker upon receipt of a copy of said loan commitment which has been issued to the Borrower. Said deposit shall be retained by Broker as liquidated damages in the event Borrower shall refuse to accept the same provided it meets the conditions herein specified.”

The relevant part of the October 31, 1967 agreement which modified the October 18, 1967 agreement is:
“That 2% of the loan amount is this day being disbursed to the investor in accordance with the Escrow Agreement executed on October 18, 1967.”